IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINda M. BERRY and<br>CRYSTAL BARNETT<br>individually and on behalf of other<br>similarly situated individuals,<br><br>        Plaintiffs,<br><br>  vs.<br><br>QUICK TEST, INC., and MVL GROUP INC.,<br><br>        Defendants. | Case No. 11 C 4435 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Linda M. Berry and Crystal Barnett have sued Quick Test, Inc. and MVL Group Inc. They assert claims under the Fair Labor Standards Act (FLSA), as well as supplemental Illinois law claims. Plaintiffs have moved for the Court to conditionally certify the case as a collective action pursuant to 29 U.S.C. § 216(b) and authorize notice to similarly situated Quick Test employees. For the reasons stated below, the Court grants plaintiffs' motion in part and denies it in part.

**Background**

Quick Test, a subsidiary of MVL, performs market research for businesses. Among other activities, Quick Test has offices at shopping malls where it interviews consumers. It has more than forty mall locations across the country, including two in Illinois.

Plaintiffs both worked for Quick Test at a mall in Joliet, Illinois. They received an

hourly wage from Quick Test, and Quick Test tracked the hours that they worked through use of a time clock located at the Joliet office. Barnett worked as an interviewer for about three months in 2010. Berry was hired as an interviewer in May 2008 and was promoted to supervisor in January 2010. Quick Test fired Berry in May 2011, claiming that she had falsified consumer surveys.

Plaintiffs claim that Quick Test violated the FLSA by forcing them to work off the clock and thus not paying them the overtime wages to which they were entitled under the law. They claim that they were forced to perform the initial step of the consumer interviews at home and on their own time. They also claim that they were forced to work off the clock at Quick Test's Joliet offices and that they saw other employees doing the same. Plaintiffs argue that they were forced to work off the clock because Quick Test imposed quotas on employees requiring that they conduct a certain number of interviews and that these quotas were unrealistic and could not be completed in the employees' scheduled working hours. Plaintiffs claim that the manager of Quick Test Joliet location, Lisa Beltemacchi, responded to the quotas and demands to reduce labor costs by ordering workers to work off the clock.

## Discussion

The FLSA provides that employers must pay an employee who works more than forty hours in one work week at one and one-half times the employee's regular rate of pay for the time over forty hours. 29 U.S.C. § 207(a)(1). Employers must also pay employees at least $7.25 per hour. *Id.* § 206(a)(1).

Pursuant to the FLSA, "any one or more employees for and in behalf of himself

or themselves and other employees similarly situated" may sue an employer through a collective action to recover unpaid overtime or minimum wages. 29 U.S.C. § 216(b). Once an FLSA action is filed, district courts have "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *accord Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) ("A district court has wide discretion to manage collective actions.").

"Courts commonly apply a two-part test to determine whether an FLSA claim may proceed as a collective action." *Russell v. Ill. Bell. Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010); *see Smallwood v. Ill. Bell. Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) (noting that Seventh Circuit has not adopted a standard but that a majority of courts use the two-part test). The first stage is conditional certification. "In the first step, Plaintiffs only need to make a minimal showing that others in the potential class are similarly situated." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (internal quotation marks omitted). At this stage, plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Smallwood*, 710 F. Supp. 2d at 750 (internal quotation marks omitted); *accord Jirak*, 566 F. Supp. 2d at 848.

> Although the inquiry is undemanding, the court is under no obligation, as it would be on a motion to dismiss, to accept the plaintiff's allegations as true. Rather, the court evaluates the record before it, including the defendant's oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members.

3

*Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (citation and internal quotation marks omitted). Other courts have stated that at the first stage, plaintiffs must make "substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotation marks omitted); *accord Trezvant v. Fid. Empl'r Servs. Corp.*, 434 F. Supp. 2d 40, 43 & n.2 (D. Mass. 2006).

Plaintiffs contend that the Court should conditionally certify a collective action including all persons employed by Quick Test nationwide as hourly employees within the past three years. Defendants argue that plaintiffs have not satisfied their burden for a nationwide collective action or even one limited to Quick Test's Joliet office.

**A.     Conditional Certification**

**1.     Joliet collective action**

Plaintiffs have made the requisite factual showing that the other hourly employees at Quick Test's Joliet offices were subject to a common plan or policy that violated the law. In an affidavit, Berry states that her manager, Beltemacchi, ordered Berry to conduct the initial stages of consumer surveys from her house on her days off and that she often spent several hours a day making these phone calls. Pl. Ex. A at 3–4. Initial contact had to be conducted away from Quick Test's offices, because Quick Test only had two phone lines available for the purpose of contacting potential interviewees. *Id.* at 4. Berry also stated that her husband Tim, who also worked for Quick Test, made phone calls from home, as did Barnett and Ashleigh Nussbaum,

another employee. *Id.* at 4–5. Beltemacchi ordered Berry to do other work at home, as well as to come in early and work for an hour or more before officially clocking in. *Id.* at 5–7. Berry claims that other employees were likewise forced to do work before clocking in, though she does not name any particular employee. *Id.* at 7. Beltemacchi also ordered Berry to clock out for a lunch break but continue to work, and she made errors and alterations on Berry's time cards that resulted in Berry not being paid for some of the hours of work for which she had been clocked in. *Id.* at 8–9. Berry claims that she was required to sign her time card at the beginning of the week, before any times were entered on it, and that she was therefore unable to review or verify Beltemacchi's time calculations. *Id.* at 15.

Barnett, in her response to interrogatories from defendants, stated that she was ordered to make initial contact with potential interviewees off the clock and that she informed her superiors, who she does not name, that she had done this work. Pl. Ex. B at 3–4. Barnett also claims that Quick Test altered her time cards and ordered her to sign the altered time cards. *Id.* at 4.

Berry's husband Tim, who worked intermittently for Quick Test, confirmed that he had received similar treatment. In an affidavit, he stated that Beltemacchi ordered him to work from home, often to make calls to potential interviewees. Pl. Ex. C at 2–3. Tim was aware that Barnett and Erika Rolando, another Quick Test employee, also had to work from home. *Id.* at 6. Beltemacchi also ordered Tim to work off the clock at Quick Test's offices, and he witnessed Quick Test employees Nussbaum, Eleanor Knight, Arthur Leos, William Barker, and Zachary Spencer also working off the clock. *Id.* at 7.

5

Plaintiffs also provide an e-mail in which someone from Quick Test requests that Tim perform some initial contacts at home. Pl. Ex. C-1. The identity of the sender of the e-mail is unclear, and defendants suggest that it was Lisa Berry herself, but clearly *someone* from Quick Test requested that Tim contact potential interviewees while he was not in the office. The e-mail does state, however, "If you don't want to or can't do this please call me and let me know," suggesting that Tim had the ability to refuse to work from home. *Id.*

There are payroll documents suggesting that Tim Berry was not paid for all the time he worked. A summary document states that Tim worked two and a half hours in some week but conducted twenty-three interviews. Pl. Ex. C-4. Tim claims that this is impossible, because "each interview could take 10–30 minutes or more," Pl. Ex. C at 5, and therefore the payroll summary is evidence that Quick Test was not paying him for all the time he worked. Plaintiffs also present five of Tim's earning statements. Pl. Ex. C-5. They reflect that in several two-week periods, Tim worked very few hours but received large amounts of incentive pay for completing consumer interviews. *Id.* In two weeks in December 2010, for example, Tim worked three hours and received $24.75 in hourly wages but earned $111.25 in incentive pay. Plaintiffs argue that these show that he was not being paid for all of the hours that he worked, because he could not have earned so much incentive pay in so few hours. Plaintiffs do not, however, explain how Quick Test calculated incentive pay or whether it could be a substitute for regular hourly wages.

Defendants contend that plaintiffs have not shown that there are other plaintiffs situated similarly to the currently named plaintiffs. In response to plaintiffs' evidence,

6

defendants have obtained affidavits from twelve of the thirteen hourly employees working at Quick Test's Joliet office on September 30, 2011. All twelve of the affidavits state that the employees were paid for all of the hours they worked, that they were paid one-and-one-half times their normal rate when they had to work overtime, and that they never knew any Quick Test employee to complain about not being paid for work. Def. Ex. A. Among the employees who provided affidavits are Barker, Leos, Rolando, and Spencer, all of whom Tim Berry claimed had worked off the clock or at home. Defendants argue that in the face of the twelve affidavits, plaintiffs have not shown that there are similarly situated plaintiffs justifying conditional certification.

At the conditional certification stage, however, "courts do not need 'to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'" *Trezvant*, 434 F. Supp. 2d at 43 (quoting *Kalish v. High Tech Institute, Inc.*, No. Civ. 04-1440 (JRT/JSM), 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005)); *accord Scott v. Heartland Home Finance, Inc.*, No. 1:05-CV-2812-TWT, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006). Defendants' affidavits have created a factual dispute regarding whether certain employees were forced to work off the clock and who Tim Berry saw working off the clock. But the mere fact that defendants have offered contrary affidavits does not mean that the court may not conditionally certify a collective action. *See Grayson*, 79 F.3d at 1097. Resolution of the factual disputes is inappropriate at this stage of the collective action process. Similarly, defendants argue that the affidavits provided by Linda and Tim Berry are not credible, because they dispute Linda's claims that she was not paid for some of the time she was clocked in and Tim's claims that

other employees worked off the clock were disputed by those employees. When deciding on conditional certification, however, a court need not make credibility determinations. *See Trezvant*, 434 F. Supp. 2d at 43. Indeed, resolving these factual and credibility disputes would require, in effect, a mini-trial on the papers, likely preceded by extensive discovery. This would effectively defeat the purpose of the two-stage certification process, and it would put potential but not yet named plaintiffs at risk of losing their claims due to the running of the statute of limitations. Such determinations are better made at stage two, after both sides have had a fair opportunity to conduct discovery.

Defendants cite two cases to support their position, but they are distinguishable. In *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill. 2003), the court stated that "a demonstration of [defendant's] payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a common policy or plan by Lifeway that violated the FLSA." *Id.* at 1046. Defendants argue that this case is similar, because plaintiffs offer only their own claims and the evidence of Tim Berry, out of approximately forty-nine hourly employees who worked at Quick Test's Joliet office in the last three years. In *Flores*, however, the court characterized plaintiffs' evidence as showing only that two plaintiffs had not been paid one and one-half hours of overtime combined. *Id.* Here, by contrast, the plaintiffs have offered a great deal more evidence of unpaid work. In particular, Linda Berry alone claims that she was not paid for more than 1400 hours of work in two years, Def. Ex. L at 11, and plaintiffs claim that they saw other employees do the same. Plaintiffs' and defendants' affidavits create a factual dispute regarding whether four employees other

8

than the plaintiffs and Tim Berry worked off the clock, and Tim's statements that two other employees worked off the clock are not directly rebutted on this point.

Defendants also cite *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350(BSJ), 2009 WL 7311383 (S.D.N.Y. 2009), in which the court refused to conditionally certify a collective action of all sales workers in Sprint stores nationally. *Id.* at *1, 5. In denying conditional certification, the court noted that "Defendants provided more than a dozen affidavits to support their argument that Plaintiff is not similarly situated to her potential class members based on the evidence provided." *Id.* at *4. In that case, however, the court rejected a *national* collective action. It specifically distinguished cases in which collective actions had been conditionally certified for a single location, noting that its analysis might be different "when the potential class is made up of individuals who worked in the same location, during the same general period, under essentially the same management." *Id.* at *5 (internal quotation marks omitted).

Under the first stage conditional certification standard, plaintiffs have made the necessary factual showing that they were forced to work off the clock and were not paid in full for the hours they worked. They have also made the necessary showing that their treatment was the result of orders and policies developed by their manager, Beltemacchi, and that other employees at the Joliet office, including two from whom neither side has presented any affidavit or declaration, were victims of the same policies and are thus similarly situated.

### 2. National collective action

Although plaintiffs have established that they are similarly situated to the other

employees at Quick Test's Joliet office, they have failed to make a similar showing in relation to all hourly Quick Test employees nationwide.

Quick Test's employee handbook clearly prohibits working off the clock. It states that "[i]f an employee is asked to work over time, without hours being properly recorded on a time card or time sheet, the corporate office should be notified immediately," and "[s]hould an employee be asked to work without hours being properly recorded on either a time card or time sheet, the corporate office should be notified immediately." Def. Ex. E at 4–5. That said, "[l]awful written (or verbal) policies will not shield the company from liability if plaintiffs can show other company-wide practices that may have been contrary to those policies and violated the FLSA." *Russell*, 721 F. Supp. 2d at 815; *see MacGregor v. Farmers Ins. Exchange*, Civil No. 2:10-CV-03088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011).

Beyond the evidence that Beltemacchi made employees at the Joliet office work off the clock, plaintiffs offer only two facts in an attempt to show that Quick Test employees were victims of a nationwide policy.

First, plaintiffs claim that Quick Test used a quota system that required employees to complete a certain number of interviews. They contend that the quotas set were unrealistic and that employees had to work off the clock to fulfill the quotas because Quick Test discouraged employees from working more than forty hours per week. Quick Test denies that it had a quota system, but plaintiffs have presented a Quick Test corporate document that discusses quotas. Pl. Ex. E. The document indicates that Quick Test quotas are primarily imposed by its clients, who want the

10

company to interview a certain number of consumers of a given age, gender, and background. The Quick Test document states that offices should avoid conducting interviews in excess of their quotas, because clients may not pay for these additional interviews. *Id.* at 504, 507. Plaintiffs have also presented an internal Quick Test e-mail indicating that client quotas are divided up among locations and are reallocated when a location is unable to complete its share of the quota. Pl. Ex. F at 724.

The Quick Test document indicates that employees should be given an assignment of a number of interviews to conduct in a day. The document reads:

> [I]t is easy to designate what quotas are needed for daily production . . . . To keep the staff informed, assignments should be given to each member, which outlines the exact quotas, i.e. (3) male 18–34, 1 female[ ] 35–54. This quota assignment can then be taken onto the mall floor with each interviewer for easy reference during the day. This not only tells what is expected, but also, what quotas are still available on all jobs that an interviewer is assigned to for the day.

Pl. Ex. E at 504. The quoted language illustrates that Quick Test is interested in preventing its interviewers from conducting interviews in excess of quotas but also that it assigns quotas to the interviewers to let them know "what is expected." *Id.*

Nevertheless, the existence of a quota for employees does not itself indicate that all Quick Test employees were subject to a common policy of requiring employees to work off the clock. Plaintiffs have offered evidence that their manager, Beltemacchi, ordered them to work off the clock and that she did so in reaction to the quotas and in order to keep costs down. But they have offered no evidence that managers at any other Quick Test office reacted similarly. *See MacGregor*, 2011 WL 2981466, at *3; *Eng-Hatcher*, 2009 WL 7311383, at *4 (denying national conditional certification in part

11

because plaintiff had no evidence from other stores to show that Sprint policies caused all store managers to order employees to work off the clock). Further, the quotas appear to have varied over time and across locations, as new clients requested interviews and those interviews were assigned to offices. In short, the existence of quotas does not make the hourly employees at the various Quick Test offices similarly situated. See *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 429 (N.D. Cal. 2010) (sales targets that changed over time and varied across 800 branches meant that employees were not victims of a common policy); *Eng-Hatcher*, 2009 WL 7311383, at *4 (denying conditional certification in part because sales quotas varied by store and by month); *Simmons v. T-Mobile USA, Inc.,* Civil Action No. H-06-1820, 2007 WL 210008, at *6 (Jan. 24, 2007) (denying conditional certification in part because there was no evidence that sales quotas and policy discouraging overtime affected hourly employees in different stores in the same manner).

Second, plaintiffs state that a large number of Quick Test employees working at an office in Oklahoma were terminated for falsifying consumer surveys. Plaintiffs contend that these employees must have falsified surveys because of the quotas, which otherwise would have required them to work off the clock. There is, however, no evidence to support plaintiffs' contention. The uncontested fact that Quick Test fired some employees for falsifying surveys is not evidence that managers in other Quick Test locations forced employees to work off the clock in violation of FLSA.

In sum, plaintiffs have not met their burden of showing that Quick Test employees working at other offices were victims of a common policy or plan.

Accordingly, the Court declines to conditionally certify a nationwide collective action.

**B.     Proposed notice**

Plaintiffs have submitted a proposed notice to be sent to the other potential plaintiffs in the proposed collective action.  Defendants raise several objections to the proposed notice but do not fully explain the substance of their objections.  Defendants also ask to be allowed to submit their own proposed notice.  Additionally, the Court has conditionally certified a more limited class than that requested by the plaintiffs.  For these reasons, the parties are ordered to confer promptly and attempt to agree to a form of notice.  The parties are to submit an agreed notice or separate proposals to the Court within seven days of this decision.

Plaintiffs have requested that defendants provide a computerized list of all potential opt-in plaintiffs.  The Court orders that defendants provide a list of all hourly employees at the Joliet office in the past three years, along with their last known addresses and telephone numbers.  The Court denies at this time plaintiffs' request that defendants produce the Social Security numbers of the employees.  *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 939–40 (N.D. Ill. 2008).

## Conclusion

For the reasons stated above, the Court grants in part and denies in part plaintiffs' motion for conditional certification and notice [docket no. 30].  Defendants are ordered to provide plaintiffs with a computerized list of employees at the Joliet office within the last three years.  The parties are ordered to submit a proposed notice by April 11, 2012.  The case is set for a status hearing on April 18, 2012 at 9:30 a.m.  The ruling

date of April 9, 2012 is vacated.

_____
          MATTHEW F. KENNELLY
Date: April 4, 2012          United States District Judge

14